## SMITH *v.* SMITH

[No. 264, September Term, 1969.]

*Decided March 6, 1970.*

264

The cause was submitted on brief to HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

Submitted on brief by *Thomas B. Yewell* for appellant.

Submitted on brief by *Marion E. West* for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

On 4 July 1966 the Smiths ceded their independence, each for the second time. Their marriage on that day

brought to an end an extended liaison; to quote appellant's counsel, it "broke up a beautiful friendship." The appellant (Jerry) is a major in the Air Force. From an earlier marriage he has two children. Nine children (six of whom survive) were born to the appellee (Christine) as a result of her first marriage; she "thank[ed] goodness" their care and custody were the responsibility of her former husband. Her union with Jerry is childless.

In January 1967 Jerry was transferred from Tucson, Arizona to Andrews Air Force Base, in Prince George's County. Before he and Christine left Tucson the marriage had deteriorated to an extent that, according to Jerry, divorce was contemplated. Upon their arrival at Andrews he rented two apartments in an apartment house in nearby Suitland. He testified that "pursuant to * * * [their] understanding" (to separate and after 18 months to be divorced) he "bought her an apartment full of furniture * * *, gave her $2000 toward a new car, * * * bought her a $1000 TV set * * * and agreed to pay her rent for a full year." Christine "moved into her apartment and * * * [he] remained in * * * [his] apartment." At the hearing before the trial judge, Parker, J., in August 1969, Jerry testified that after Christine moved into her apartment they did not live together nor did they, at any time thereafter, have sexual intercourse.

Christine seems to have heard a different drummer. Called to testify on behalf of Jerry she said their separation "was not agreeable" to her, that "she did not want a divorce." She "went along with him because * * * [she] knew that's what he wanted and he gets what he wants." She hoped his "personal problems [other women] would be taken care of" and that they "would get back together." She declared she loved him and that her "door was always open to him." They met frequently and enjoyed sexual relations "many, very many" times. Asked why she allowed these incidents to happen, she said "because * * * [she] wanted them to." He wanted to see her to satisfy "his personal needs;" she "wanted

him" and she felt she "couldn't hurt herself by being with him." She stayed with him one night in September 1967. In the early evening he asked her to come back. She said she "would have to think about" it. "A couple of hours later" she told him she would come back. Nothing came of it, however.

Jerry filed his bill for a divorce a vinculo in April 1969. Christine answered denying the allegation of voluntary separation. Judge Parker dismissed the bill for lack of corroboration.

We have held that the requirements for a divorce a vinculo on the ground of voluntary separation [1] are threefold. There must be an express or an implied mutual agreement between the parties to separate accompanied by a mutual intent not to resume the marriage relationship. *E.g., Wilner v. Wilner,* 251 Md. 13, 24 (1968), and the cases therein cited; *Sullivan v. Sullivan,* 234 Md. 67, 72 (1964). The parties must voluntarily have lived separate and apart without cohabitation for at least 18 consecutive months. *See Hamilton v. Hamilton,* 242 Md. 240, 245 (1966) (dictum); and *Lillis v. Lillis,* 235 Md. 490 (1964). Proof that the separation is beyond any reasonable hope of reconciliation is the third requirement.

That *every* element *must* be corroborated is well settled. Code, Art. 35, § 4 *as amended* (1969 Cum. Supp.); *see Fuller v. Fuller,* 249 Md. 28 (1968); and *Smith v. Smith,* 225 Md. 282 (1961). However, in a contested divorce case where there is no basis for inferring collusion the corroboration need only be slight. *E.g., Stewart v. Stewart,* 256 Md. 272 (1969).

There was one other witness, Colonel Harry F. Lenahan, Jr. He testified he had known Jerry "since June of

---

1. Code, Art. 16, § 24 (1966 Repl. Vol.) provides that "[u]pon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii * * * when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for eighteen consecutive months prior to the filing of the bill of complaint, and such separation is beyond any reasonable hope of reconciliation." An amendment effective 1 July 1969 adds a seventh ground for divorce to the section. Code, Art. 16, § 24 (1969 Cum. Supp.).

'67" but that he had neither met nor seen Christine prior to the hearing. He said Jerry told him the marriage was beyond any reasonable hope of reconciliation. To the best of his knowledge, he added, the parties had not cohabitated during the time he had known them. Jerry "readily concedes" that Col. Lenahan's testimony, standing alone, falls short of the necessary corroboration. He insists, however, that the deficiency was supplied by the admission of a letter, dated 30 January 1969, to him from Christine's attorney. The text of the letter follows:

> "Your wife, Christine, has been in to see me relative to your domestic difficulties and feels at this time that the only proper solution is a divorce. She states, among other things, that you have been separated since January 1967 primarily because you have not wished her to live with you since that time. Her main concern about this matter is that she makes only $69.00 per week and finds it impossible to support herself on that amount, but before proceeding with any Court action and asking the Court to determine or set some amount as alimony and support I would welcome the opportunity of meeting with both of you at your earliest opportunity to discuss some proper settlement of this matter, and settlement of your joint property rights before proceeding with Court action for the divorce. I trust I might hear from you within the next few days in this connection."

The most that can be said of the letter is that it tends to corroborate Jerry's testimony that they had been living in separate dwelling places. As has been pointed out the statute, Code, Art. 16, § 24 (1966 Repl. Vol.) requires the living "separate and apart" to be *"without any cohabitation."* (Emphasis added.) "Cohabitation," to be sure, is a word which resists precise definition. *Tarr v. Tarr,* 164 Md. 206 (1933) ; 14 C.J.S., *Cohabitation* 1312 (1939). We are fully persuaded, however, that the Leg-

islature intended, when it used the words "without any cohabitation" in § 24, to proscribe sexual relations between husband and wife living "separate and apart" with the intention and for the purpose of establishing this particular ground for divorce. *See Lillis v. Lillis, supra.* Christine's testimony, which Judge Parker was free to believe, scuttles any corroborative effect the letter might otherwise have had. As Judge Collins said, for the Court, in *Cullotta v. Cullotta,* 193 Md. 374, 382 (1949), quoting *Maranto v. Maranto,* 192 Md. 214, 217 (1949), " '[a] part from [the] statute, to sustain the burden of proof, testimony of one spouse, flatly contradicted by the other, needs corroboration \* \* \*.' "

Jerry advances the argument that the voluntariness of the separation is corroborated by Christine's willingness to move into the apartment he rented for her in January 1967. He should recall that he testified he sought a reconciliation in August of.1967; Christine said it was in September and that she accepted his offer. She testified also that on many other occasions when she spent weekends with him she asked him to take her back. In *Chalkley v. Chalkley,* 236 Md. 329 (1964), Judge (later Chief Judge) Prescott for the Court observed that "a proper offer of reconciliation before the expiration of the statutory period destroys the voluntary nature of the agreement to separate." *Id.* at 333. *See Jester v. Jester,* 246 Md. 162 (1967), and *Moran v. Moran,* 219 Md. 399 (1959). We have not overlooked the fact that *Chalkley* was decided prior to the enactment of Code, Art. 16, § 26A (1969 Cum. Supp.)[2] and assuming, without deciding, that the

---

2. As amended by Chap. 636 of the Laws of 1968, § 26A is as follows:

"In all actions for divorce an offer of reconciliation or an attempt to reconcile by one spouse without the concurrence of the other spouse shall not be available as a defense to a divorce nor in and of itself be a bar to a divorce; nor shall the refusal of a spouse to accept an offer of reconciliation made by the other spouse or the rejection by a spouse of any attempt at reconciliation made by the other spouse be available as a defense to a divorce nor in and of itself be a bar to or a ground for a divorce."

Legislature intended it to apply to voluntary separations, it can have no relevance in the circumstances of this case because, as we have said, there was a "concurrence of the other spouse."

It seems superfluous to say that Judge Parker's decision is not clearly erroneous. We shall not disturb it.

*Decree affirmed.*
*Appellant to pay the costs.*